HARRIS, Judge,
dissenting.
Charles N. Clifton died in 1978 survived by his widow, Dorothy, and two adult children, Charles A. and Lonnie Clifton. Charles N. willed “all of my estate, real, personal or mixed to my wife, Dorothy.”
On August 13,1986 Charles A. purported to convey a one-half, undivided, remainder interest in what had formerly been Charles N.’s homestead estate to his son, Charles A. Clifton, Jr. The purchase price was $104,000 with $4,000 paid in cash together with a $100,000 purchase money mortgage which had a $96,162 balance at the time of trial. First American Title Insurance Company insured this title.
This court determined in Clifton v. Clifton, 553 So.2d 192 (Fla. 5th DCA 1989), rev. denied, 563 So.2d 631 (1990) that in fact Charles A. Clifton had no remainder interest which he could convey to his son. Charles, Jr., brought this action on the title policy. The issue before the trial court was the amount of damages suffered because of the failure of title. The measure *469 of damages was the value of the remainder interest insured by the title company less the amount remaining unpaid on the purchase money mortgage.
It is axiomatic that Charles, Jr., the plaintiff, had the burden of proving his damages.[1] He could have done so by putting on evidence directly as to the value of the remainder or he could have proved the value of the fee together with the value of the life estate so that the value of the remainder could be established by the difference. He did neither.
Because I believe that Charles, Jr. failed to prove the value of the remainder interest, I would reversé the judgment.
Appellee’s proof as to his damages at trial was his own testimony[2] and the testimony of his expert, Harold Rose.
Charles, Jr. testified that the property had a value of between $600,000 and $750,-000 as of August 13,1986 — but he refused, even though pressed, to give a value for the remainder or to even recognize that a life estate with any value existed:
Q. What is the value of the remainder, the interest insured to you?
A. I really don’t understand[.]
******
Q. But you don’t know what the value of a remainder is?
A. I don’t understand.
Q. A remainder? I’m serious, Charlie.
A. I own one half of the property or I don’t own one half of the property. ******
Q. All right. As of that date, you had an insured interest of one half a remainder.
A. Half remainder, to me, means that I own one half the property. I did own. half the property.
Q. But no right to use it because your grandmother was still living.
A. That’s an assumption. What do you mean I have no right to use it? It just says my grandmother can have a lifetime estate. It doesn’t say I’m not allowed to use the property in any way, shape or form[.]
Q. I don’t know. That’s not what was insured to you.
A. One half the property was insured.
Q. One half remainder.
A. One half remainder. And my grandmother can use — if she’s there, we can’t use the property that’s been used by other parts of the family for—
Q. And you have no opinion as to the value of a one-half remainder interest?
A. Oh, yes, I do. If you say the property is worth a million dollars, then I’m entitled to a one half million dollars. That’s one half remainder, in my opinion.
This testimony is insufficient to prove the value of the remainder interest insured by appellant.[3] It is apparent that Charles, Jr. failed to recognize that he has no pos-sessory interest in the property so long as his grandmother survives. Even though the grandmother had survived (thus excluding any rights of the remainderman to use the property) over four years at the time of trial — where she was still described as being in good health and having a life expectancy of seven years — no value was recognized for that life estate. This testimony was incredible and is unworthy to sustain the verdict in this case.[4]
Appellee’s expert, Harold Rose, purported to appraise “Dorothy M. Clifton’s life estate”. Appellee urges, and I agree, that Rose’s overall testimony indicates that he was appraising the entire fee simple title. His estimate was $714,180. His testimony *470 was as of the appraisal date[5] and did not consider the fact that appellee’s insured interest was only a remainder.
Appellant moved for directed verdict at the close of plaintiff's case on the basis that there had been no proof as to the value of the remainder interest and, therefore, no basis in the evidence which could support a jury verdict determining any value for the remainder. The judge, I think improperly, denied this motion.
During appellant’s case below it did put on evidence through an expert, Peter Woods, as to the value of the life estate which was stated to be about 50% of the expert’s estimate of the entire fee.[6] The court instructed the jury that “the measure of damages sustained by the plaintiff is the fair market value of the insured interest less the amount of any applicable purchase money mortgage.”
After jury deliberations commenced, through the bailiff, the jury asked for a copy of the jury instructions. This was denied. The jury had additional questions relating to the effect of the unpaid mortgage. During the discussion of the jury’s inquiry, appellee’s counsel stated “I bet they’re hung up on insured interest.” It was agreed that the court should clarify the instruction. The court called the jury back in and told them that “the measure of damages ... is the fair market value of the undivided one half remainder interest ... less the amount of any applicable purchase money mortgages.”
Although neither counsel requested further clarifying instructions, it is clear that the jury remained confused. It returned a verdict based on a total value of the remainder interest in excess of the value placed on the entire fee by appellee’s expert. The jury, as did appellee and his expert, ignored the life estate and equated the insurance policy on a remainder interest with a fee title policy. This was error as a matter of law.
I would REVERSE.

. The policy provided that the company was liable for "the least of ... the actual loss ... or the amount of the insurance.”

. Although under our previous Clifton opinion, Charles, Jr. was never the owner of the property, he was nevertheless permitted to testify as owner .

. You do not prove damages for the loss of a Ford by establishing the value of a Rolls Royce.

. For example, had this been a condemnation award for the entire fee as of the date of taking, would the grandmother be entitled to no part of the award to compensate her for the taking of her life estate estimated to have an additional 10 years remaining?

. The appraisal date, by stipulation, was the date of the remand entered in Clifton I. Actually the title did not fail on that date; it never existed.

. He estimated the fee to be $429,000 with the life estate valued at $216,784 and one-half the remainder interest valued at $101,108. It is interesting that this figure is very close to what appellee actually paid for his remainder interest. He does not explain, if indeed his interest in the remainder was worth $375,000, how he was able to acquire it for $104,000.